## Whalen et al. *v.* Smith Fireproof Construction Co.

Argued January 23, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*James J. Regan, Jr.,* for appellant.—The very fact that the written contract provided that, in respect to the hoists, plaintiffs were to pay the hoisting engineer's time, but only while the hoist was being used by the plaintiffs, conclusively shows that the question of recompense for the use of the hoists was fully considered by both parties before the contract was signed.

From the provisions of the contract respecting the hoist and cable and defendant's supervision of the work, it is obvious that defendant was to furnish the hoist and cable and its engineer to operate the same in such a position where plaintiffs could make use of it in the work to be done as layed out and directed by defendant.

It is improper to charge the jury on a question which should be decided by the judge as a matter of law: Roth v. Miller, 15 S. & R. 100; Smith v. Latour, 18 Pa. 243; Connellogue v. English, 8 W. & S. 11; Hutchinson v. Com., 6 Pa. 125.

A union iron worker is any person who belongs to a league of workmen engaged in the particular trade of working in or with iron, the members of which are engaged at iron work either in the manufacture of iron products or in the erection of buildings, etc., as in the case at bar: Carson v. Hosiery Co., 15 Pa. Superior Ct. 476.

A contract must be construed as it is written. Even though a contract, as written, is inequitable, the courts have no right to make a new one for the parties: Indem. Exchange v. Mut. Cas. Co., 289 Pa. 426; Shafer v. Sense-

man, 125 Pa. 310; Nelson v. Von Bonnhorst, 29 Pa. 352; Phila. v. R. R., 133 Pa. 134; Reading Bank v. Yeager, 268 Pa. 167; Hamilton v. Fleck, 249 Pa. 607; Irvin v. Irvin, 142 Pa. 271.

Unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms can neither be added to nor subtracted from by parol evidence. The written instrument shall stand as the sole exponent of the minds of the parties: Wodock v. Robinson, 148 Pa. 503, 506; Hunter & Springer v. McHose, 100 Pa. 38; Jackson v. Payne, 114 Pa. 67; Krueger v. Nicola, 205 Pa. 38; Pioso v. Bitzer, 209 Pa. 503.

*Edmund R. Finegan,* with him *Saul, Ewing, Remick & Saul,* for appellee.—The term union iron workers is ambiguous and hence evidence was admissible to show the meaning of the term as used in the contract: Edmonds v. Bank, 215 Pa. 547; Bubb v. Oil Co., 252 Pa. 26; White Heat Products Co. v. Thomas, 266 Pa. 551; Simon v. Myers, 284 Pa. 3.

OPINION BY MR. JUSTICE SIMPSON, February 11, 1929:

Plaintiffs agreed with defendant to set in place the reënforcing iron rods needed in the construction of a large department store. Because of a dispute as to the two items hereinafter set forth, the present suit was brought, which resulted in a verdict and judgment for defendant, and this appeal by plaintiffs. As to the first of these items, the court left the issue to be decided by the jury, and, as to the second, gave binding instructions in defendant's favor. We will review them in the above order.

The statement of questions involved (which is a controlling factor when considering the scope of an appeal: Slemba v. Hamilton & Sons, 290 Pa. 267; Keck v. Vandyke, 292 Pa. 532), asks us to decide whether or not the court below erred in not ruling the first point in plain-

tiffs' favor, as a matter of law, because there was neither averment nor proof of fraud, accident or mistake, and hence, as they claim, the language of the contract was controlling. In answering this question, we must, as settled by a long line of cases, give to defendant the benefit of every relevant fact, and inference of fact, fairly deducible from the testimony, and reject all those that are unfavorable, though they could have been found from the testimony: Donovan v. Phila. Rapid Transit Co., 273 Pa. 152; Fluke v. Lang, 283 Pa. 54; Hunter v. Pope, 289 Pa. 560; Kohn v. Burke, 294 Pa. 282. According to this rule, the relevant evidence will be stated:

The contract provides that plaintiffs shall "set in place for concrete all the reinforcing steel bars...... for a unit price of $17 per ton......[payable] every two weeks for 90 per cent of the work done during the preceding two weeks [the balance to be paid ten days after the entire work was completed; that plaintiffs] may employ any and all laborers they see fit, but in the event it should become necessary to operate under what is known as a closed shop, and [plaintiffs] be obliged to use union lathers or union iron workers, then and from that time on, the price for the placing of the steel shall be $28.50 per ton......[Defendant] under such conditions [having] the option, upon full payment for work done up to that time, of declaring this contract null and void."

After part of the work had been completed, plaintiffs' employees, who had theretofore been nonunion laborers, organized Local Union No. 405, Reinforced Rod Workers, and the next morning refused to proceed with the work on the store, unless they were recognized as union men. This was acceded to by all parties interested, plaintiffs' agent saying to defendant that it made no difference to plaintiffs, since it did not change the wages they would have to pay to the men. From that time on, covering a period of four months, plaintiffs made up their biweekly accounts with defendant, exactly as

theretofore, charging it 90 per cent of the value of the work done, estimated on the basis of $17 per ton, and defendant regularly paid these amounts. When the work was completed, the balance claimed to be due was also billed at the rate of $17 per ton. It was not until some time afterwards, when it was ascertained the parties could not agree as to the other item in controversy, that plaintiffs made out a new bill, increasing the amount claimed by $11.50 per ton, for the last 595½ tons set in place by them.

Under the rule of practice hereinbefore stated, plaintiffs' claim regarding the first item would, probably, have to be overruled because of the law relating to accounts stated which had been regularly paid, and that relating to estoppel; but we will limit our consideration to a third point, which, as will be observed, does not depend on proof that anything was omitted from the contract, and hence does not encounter the foregoing objection made by plaintiffs. There was evidence that, after the strike above referred to, plaintiffs employed only union labor, and hence may be said to have thereafter operated "what is known as a closed shop." But this alone was not sufficient to entitle them to charge the additional sum of $11.50 a ton. It was necessary also that they should have been "obliged to use union lathers or union iron workers." Here, their claim was wrecked. The evidence is ample, hardly, if indeed at all, disputed, that they continued, as theretofore, to use the same men, whom they admit, were laborers and not lathers or iron workers, and did not even belong, in their new connection, to a local union in which lathers and iron workers were also members. The verdict of the jury on this point, must, therefore, be sustained; indeed, if it had been for plaintiffs, a sound discretion would have required it to be set aside.

The other item in dispute was the sum of $1,012.28, which defendant alleged as a counterclaim for expenses paid by it for progressively moving its hoists from floor

to floor of the building. These hoists, which took the place of the single hoist specified in the contract, belonged to defendant, and were used sometimes by plaintiffs, as provided in the agreement, but more frequently by defendant. The contract provided that defendant should furnish the steel bars of the proper size and shape to be set in place, the hoist and cable, all necessary concrete accessories to be used in the work, all necessary working and placing drawings, and should lay out the work on each floor in sections of approximately one day's operation, plaintiffs agreeing to finish each such section before advancing to another. All that it specified plaintiffs should do was to unload and rack the steel bars when delivered at the building, to set them in place for concreting, and "to pay the hoisting engineer his time while the hoist is being used by" plaintiffs. It will thus appear that they had no work to do except that which related to unloading and racking the steel bars when delivered on the ground and setting them in place on the building, except, perhaps, attaching them to the cable, when they were about to be raised from the ground by defendant's hoist, operated by defendant's engineer, and detaching them therefrom when they reached the proper floor, and "to pay the hoisting engineer his time while the hoist is being used" for them. All else had to be done by defendant, and hence the maxim expessio unius est exclusio alterius applied, and the trial judge's ruling on the point was erroneous, and must be reversed. It might just as well be said that plaintiffs were required to pay for bringing the hoist and cable to the building, and for its first erection after it reached there. Possibly this was thought to be too patently objectionable, yet, in construing the contract, it was in the same class as the claim actually made.

On this record, we can enter a final judgment, and will do so. Both sides agree that the question should be decided by construing the contract, and that $1,012.28 is the sum which defendant, as we now hold, erroneously

deducted from plaintiffs' claim. Under such circumstances, the Act of May 20, 1891, P. L. 101, authorizes us to enter such a judgment as the court below should have entered: Summers v. Kramer, 271 Pa. 189; Lukens v. Wharton Avenue Baptist Church, 296 Pa. 1.

The judgment of the court below is reversed and judgment is here entered for plaintiffs for $1,012.28, with interest from November 14, 1926, the damages to be assessed in the court below by its prothonotary.