## In re Private Road in Juniata Township

*S. E. Troutman*, for petitioners.

*William S. Morrow*, for exceptants.

RICE, P. J., January 27, 1948.—This is a proceeding for a private road under section 11 of the General Road Act of June 13, 1836, P. L. 551, as last amended by section 1 of the Act of April 28, 1927, P. L. 485, 36

PS §2731, the applicable portions of which are as follows:

"The several courts of quarter sessions shall, in open court as aforesaid, upon the petition of one or more persons, . . . for a road from their respective lands . . . to a highway or place of necessary public resort, . . . direct a view to be had of the place where such road is requested, and a report thereof to be made, in the same manner as is directed by the said act of thirteenth June, one thousand eight hundred and thirty-six."

Viewers were appointed on the petition of S. Roy Campbell and Annie E., his wife, setting forth their ownership of a tract of land in Juniata Township, Perry County, having thereon a dwelling house and outbuildings, their need for a private road to a public road leading from Markelsville to Newport at a designated point, the name of the owner, namely, Elizabeth Bealor, of the land over which such proposed private road is to be laid out, and other facts not in issue. The viewers presented their report to the court, and it was confirmed nisi. Mrs. Bealor has filed exceptions to the report, and the matter comes before the court on the exceptions.

The report states, inter alia: (a) That the land of petitioners . . . is surrounded by lands of other persons; (b) that petitioners . . . have no road or right-of-way from their land and dwelling house to a public highway or place of necessary public resort or to any private way leading to a public highway or place of necessary public resort; (c) that it is a matter of strict necessity that petitioners have a private road as prayed for in their petition. The report then proceeds to say:

"The undersigned viewed the ground proposed for said private road and agree that there is a strict necessity for the same and to return for private use the following road," and then follows a description of a road by courses and distances, beginning at a point on the

line of lands of petitioners on one side and Elizabeth Bealor on the other to a point on or at a public road designated. The report then states: "That a road south of the road hereinabove laid out and along Big Buffalo Creek would be impracticable because of flood and low and wet ground; that a road north of the road hereinabove laid out would be of greater distance and both impracticable and inaccessible; and that a road across the Big Buffalo Creek would be impracticable and unusable a greater (great) part of the year because of floods, high water and ice". The report, after stating other matters not material to the exceptions, assesses the amount of damages to be paid by petitioners to Elizabeth Bealor at the sum of $275.

Mrs. Bealor did not apply for a review within the time prescribed but filed nine exceptions to the report. By agreement of counsel, certain testimony in support of and against the exceptions was taken and reduced to writing. The first five exceptions allege substantially, but not in these words, that petitioners have available for their use to and from their property two ways or roads, to wit: (1) a road from their line, which is at or in the Big Buffalo Creek, south across the Creek by means of a fording and through lands of Samuel Adams to the State Road; and (2) a road from their line north over the lands of others to a public road on or across Hominy Ridge. This description of these roads is not in the language used in the exceptions but substantially states the averments. The testimony of exceptant and her witness substantially shows that two such ways have been in existence at times and have been used for access to and from the Campbell property. The testimony of petitioners and their witnesses does not materially differ and the report of the viewers indirectly recognizes the existence of these two ways. But the testimony also shows that the first mentioned road crosses the creek by a fording and is unusuable at times on account of floods, ice and wet ground and that the second mentioned road is long

and hilly and has been little used. There is no evidence that petitioners have a legal right to use either way. These conditions are in accord with the findings of the viewers last quoted above. These exceptions aver that, by reason of these two ways, there is no necessity for the proposed private road through the lands of exceptant.

Supposing that petitioners have one or two rights of way, by express grant or by prescription or otherwise, is that sufficient to show that there is no necessity for a statutory road? The answer to that depends on the meaning of the word *necessity*, or the word *necessary*.

"As used in jurisprudence, the word 'necessary' does not always import an absolute physical necessity, so strong that one thing, to which another may be termed 'necessary', cannot exist without that other. It frequently imports no more than that one thing is convenient or useful or essential to another.": Black's Law Dictionary (3rd ed.) 1227.

In County of Lancaster v. Y. W. C. A., 92 Pa. Superior Ct. 514, 518, a case involving the taxability of real estate allegedly devoted to charitable purposes, it was said: "The word 'necessary' as used in the statute does not mean 'absolute necessity' but rather a 'reasonable necessity', 'convenient and useful' to the purpose of the charity.": quoted also in U. Pres. W. Assn. v. County of Butler, 110 Pa. Superior Ct. 116, 122, 123. In Lutz et ux. v. Allegheny County et al., 302 Pa. 488, the word "advisable" was held to mean "necessary". In First Baptist Church v. Pittsburgh et al., 341 Pa. 568, 576, another tax case, it was said:    . .

"The word 'necessary' does not import an absolute necessity, but its meaning cannot be broadened so as to comprehend that which is merely desirable. As used in this statute, the meaning is limited to a reasonable necessity . . ."

In Pocopson Road, 16 Pa. 15, the report of viewers laying out a private road stated that there was "occasion" for the proposed road, and the Supreme Court held it to be a sufficient finding that the road was "necessary". In Brecknock Twp. Road, 2 Woodward 437, it was held that a petitioner for a private road has the right to have one laid out over the lands of his neighbors, even though he may have access to a public highway over his own lands, if such a route be specifically difficult and burdensome. That the existence of a private road by grant does not necessarily bar a statutory proceeding for a private road, see Boyd et al. v. Negley, 40 Pa. 377, 383, Stewart's Private Road, 38 Pa. Superior Ct. 339, Fayette Co. Commissioners' Petition, 289 Pa. 200, 207, Kraft's Petition, 33 Lanc. 386. Considering both the report of the viewers and the testimony, we cannot conclude that there is not a reasonable necessity for the proposed road. Both the report of the viewers and the testimony convince us that petitioners do not have the legal right to use either of the two roads above mentioned across the lands of others intervening between petitioners' lands and the public highways to the south and north, respectively, that the road across the Big Buffalo Creek would not be usable at all times in the year unless a bridge were constructed and, without a bridge, would not be usable by motor vehicles, and that the road to the north, not having been used for 25 years or more, according to testimony of Mrs. Bealor, could be made fit for travel by motor and other vehicles only at great expense. Therefore, we are of the opinion that there is a reasonable necessity for the proposed road.

But after all, the question of necessity for a private road is not one for the court to decide. Section 12 of the said Act of 1836 (36 PS §2732) says:

"If it shall appear by the report of viewers to the court directing the view, that such road is necessary, the said court shall direct what breadth the road so re-

ported shall be opened, and the proceedings in such cases shall be entered on record, as before directed, and thenceforth such road shall be deemed and taken to be a lawful private road."

This does not preclude an inquiry into the regularity of a road proceedings, but it does clearly and emphatically preclude the court from reviewing the question of necessity. The word "shall" contains the mandate of the law as imperiously as it is possible for any word to do. The Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, sec. 13, 46 PS §156, provides:

"In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this Commonwealth, the directions of the said act shall be strictly pursued . . ."

The Act of 1836, in providing for the appointment of viewers on a petition for a private road, creates a tribunal for a special purpose and endows it with an authority that no court has the right to destroy, and from the determination by that tribunal within the limits of its authority there is no appeal. Since the viewers decided and reported that there is a necessity for the private road in question, the court must accept their determination of that question.

When we consider other provisions of the Act of 1836, we find further support for the proposition that the matter of the necessity of a road is for the viewers to decide. Section 2 says:

"The persons appointed as aforesaid, shall view such ground, and if they shall agree that there is occasion for a road, they shall proceed to lay out the same, having respect to the shortest distance, and the best ground for a road, and in such manner as shall do the least injury to private property, and also be, as far as practicable, agreeable to the desire of the petitioners."

Section 3 says: "The viewers as aforesaid, shall make report . . . and in the said report shall state

particularly: . . . third, whether the road desired be necessary for a public or private road . . ."

Section 4 says:

"If the court shall approve of the report of the viewers allowing a road, they shall direct of what breadth the road so approved shall be opened . . . , and thenceforth such road shall be taken, deemed and allowed to be a lawful public road or highway, or private road, as the case may be." Although this section seems to refer to private roads as well as public roads, the procedure on a report of viewers as to private roads is regulated by section 12, hereinabove quoted. Section 4, in saying: "If the court shall approve of the report of the viewers allowing a road," employs different language than section 12, which says: ". . . the said court shall . . ." Thus, there is room for an argument that, with respect to a public road, the court may approve or disapprove a finding of viewers that a proposed public road is necessary but, by reason of the mandatory language of section 12, there cannot be any such argument as to a proposed private road. In Christner's Petition, 4 D. & C. 71, Judge Burkey reviews the cases on the authority of the court to consider the question of the necessity for a road and says: "I conclude, therefore, that the court is without authority to review the finding of the viewers in this case as to the necessity for the road".

Counsel for petitioners and Mrs. Bealor, the owner of the land, have stipulated in writing that the proceedings in this court entered to no. 7, January sessions, 1919, shall be considered as part of the evidence on the exceptions in the pending proceedings. Those proceedings were for a private road over the same lands of Mrs. Bealor on the application of J. C. Campbell, the predecessor in title of petitioners in the pending proceedings. Viewers were appointed, and they made a report laying out a road, finding that it was necessary and fixing the amount of damages to be paid. This

report was confirmed nisi, but Mrs. Bealor filed exceptions to it and also asked for a review. Reviewers were appointed and made a report laying out a road, finding that it was necessary and fixing damages, and exceptions were filed to it. Counsel for the parties agreed in writing as to certain facts, one item of which agreement is as follows:

"The said lands (petitioner's lands) have now and have had for many years access to the village of Markelville, by a private road crossing the Big Buffalo Creek by a fording."

A blue print of the lands involved and adjacent lands and the said creek shows this private road. The exceptions came before Judge Bailey, specially presiding, and in his opinion he said:

"We would have, without hesitation, accepted the report of the viewers and reviewers as to the necessity of this road were it not for the 'agreement as to facts'. The petitioner's right is made doubtful by the admission of the existence of this private road. There must appear a strict necessity: Private Road in Redstone Township, 112 Pa. 183; Stewart's Private Road, 38 Pa. Superior Ct. 339. In view of this situation we are satisfied that the proper thing to do is to refer the report of the viewers back to them to determine whether or not there exists a strict necessity for the private road in view of the fact that there appears to be at present another private road leading from the buildings of the Petitioner to the public road designated as the 'public road to Eschol'."

An order was made accordingly, and the reviewers made an amended report finding that the road was necessary, and again exceptions were filed. The exceptions were never disposed of, but, on January 6, 1922, counsel for petitioner, in writing, abandoned and discontinued the proceedings, and counsel for Mrs. Bealor joined in this disposition of the matter.

We cannot see how this previous proceeding or anything done in it can have any effect on the pending

proceeding. Nothing was adjudicated by the former proceeding. Petitioners were different persons. The title of petitioners to their lands are not involved in this proceeding, and the agreement of former petitioner as to the facts cannot bind present petitioners. The discontinuance of the former proceedings before a judgment was rendered deprived it of any efficacy in settling anything. Petitioners are not barred in any respect from applying for a road, but the whole matter is open as fully as if the former proceedings had not been commenced. Furthermore, the report of the viewers and the testimony show plainly that petitioners have access to their lands by a way south from their buildings across the creek to a public road but, as we have stated earlier in this opinion, the mere existence of such a way does not decide the question of necessity. It might be said that a landowner without a road to his property could purchase a helicopter and thus get to and from his property through the air and that consequently a private road to his property through the lands of another person would not be necessary. Or it might be said that these petitioners could build a bridge across the Big Buffalo Creek. We do not know which would cost the more, a helicopter or a bridge. As we have said above, it is not a question of absolute necessity, but of a reasonable necessity. This question came before the viewers, and they decided it in favor of petitioners, and we do not believe we have any authority to overrule them, since their report otherwise complies with all the requirements of the law. Hence, the first five exceptions are dismissed.

The sixth exception objects to the location of the proposed road and suggests another. The location of the road is wholly within the province of the viewers. Viewers go upon the premises of a proposed road and observe all the physical aspects of the land and are far better able to select a location than any judges

sitting in the courthouse. The statute gives the viewers power to locate the road, and if Mrs. Bealor was not satisfied with its location, she had the right to ask for a review. This exception cannot be sustained.

The seventh exception relates to the adequacy of the damages. That is a matter exclusively within the power of the viewers. The court cannot revise the figures. It is not necessary to investigate the law as to whether Mrs. Bealor could have appealed from the award of damages, as no appeal was taken.

The eighth exception alleges that the viewers did not realize their position as agents of the court but became agents of petitioners and accepted the location for the road that petitioners desired. This exception is largely argumentative. Viewers appointed by the court under the road laws constitute an independent tribunal set up by the law, and while their actions are subject to review by the court, in the same manner as the actions of the court of quarter sessions are subject to review by the Superior Court or the Supreme Court, the jurisdiction given viewers by the law must not be encroached upon. We have quoted from section 2 of the Act of 1836, which requires viewers to lay out a road in such a manner as shall be "as far as practicable, agreeable to the desire of the petitioners". This certainly means that viewers should find out from petitioners the location of the road desired by them, and if viewers do accept the location desired by petitioners, it does not mean that the viewers thereby become the agents or partisans of petitioners. If viewers act dishonestly or corruptly, their conduct can be inquired into and their action may be set aside, but there is no allegation of any such impropriety in this case. That the viewers did accept the location desired by petitioners does not create even a suspicion of partiality.

The ninth exception is but a repetition of the main burden of the first five exceptions and needs no further consideration.

## Order

And now, January 27, 1948, the exceptions to the report of viewers are dismissed and the said report is confirmed absolutely, and it is ordered that, upon the payment of the damages awarded in the report of the viewers, the private road laid out by the viewers shall thenceforth be deemed and taken to be a lawful private road.

Exception allowed.