## Adams *v.* New Kensington, Appellant.

Argued March 26, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ. Appeals, Nos. 67 and 68,

reargument refused June 26, 1953.

*Carroll Caruthers*, Special Counsel, with him *Harry W. Crum*, City Solicitor, and *Anthony J. Bonadio*, Assistant City Solicitor, for appellant.

*James Gregg*, with him *Vincent R. Smith*, *P. K. Jones* and *Wayne R. Donahue*, for appellees.

OPINION BY MR. JUSTICE ARNOLD, May 25, 1953:

This is an appeal from a verdict of a jury assessing damages to the plaintiffs for the taking of their lands by eminent domain.

By virtue of ordinances Nos. 213 and 214 the City of New Kensington approved and established widths, lines, grades, etc. appearing on the plan of the Department of Highways of the Commonwealth, showing a proposed improvement for a new street, a part of the state highway route passing over a bridge between Westmoreland and Allegheny Counties. The ordinances further adopted the plan as the official city plan for said street,

approved and opened the same as a public highway by a relocation of said state highway route, and provided for the removal of structures, for which the city assumed responsibility.

The ordinances were passed in connection with the building of a new bridge across the Allegheny River under the Act of June 4, 1943, P. L. 883, 36 PS §3201. Under this Act the bridge on the Allegheny County side was to be located in the borough of Tarentum, but the situs of the other end of said bridge was merely fixed as the County of Westmoreland. The two ordinances in question placed the bridge in New Kensington.[1]

When the ordinances were enacted a plan of the State Highway Department for the building of the road and approach to said bridge was filed with the city council and adopted. The plan provided for the building of the street or approach to said bridge through the lands of Charles Adams, William Adams and J. Fred McKean, and through the lands of Charles Adams and William Adams.

These proceedings resulted in two petitions for a view, one by Charles Adams, William Adams and J. Fred McKean (Appeal No. 67 March Term, 1953), and the other by Charles Adams and William Adams (Appeal No. 68 March Term, 1953). These resulted in awards to the respective plaintiffs; the city appealed to the court of common pleas; and the two appeals were tried together. During the trial it developed that there was an outstanding interest in the respective tracts in the trustee in bankruptcy of Daniel J. Burns, deceased. The plaintiffs having obtained a deed for the interest

---

[1] By a resolution of the county commissioners dated September 20, 1949, the County of Westmoreland agreed to extend aid to the City of New Kensington in the sum of $25,000 for the payment of property damage in connection with the construction of the road in question.

from the widow of Daniel J. Burns, had assumed that they had the entire title.

The plaintiffs and the city then stipulated: "It is stipulated and agreed by and between the parties that Charles and William Adams are the sole owners of and have the *sole right of action to an undivided twelve-thirteenth* in a larger tract of land known as the Adams and Adams tract; it is also stipulated and agreed by and between the parties Charles Adams and William Adams and J. Fred McKean are the sole owners and *have the sole right of action to damages of an undivided seven-eighths interest* in a smaller tract of land known as the Adams, Adams and McKean." (Italics supplied).

The fact that the title of the Burns interest was not in the plaintiffs was not raised by the city until it filed an answer to the plaintiffs' complaint. However, in the view we take of this, the matter is purely academic, for after verdict and before judgment the plaintiffs did acquire the Burns title from his trustee in bankruptcy. It has been held that in a case of condemnation or eminent domain an amendment may be allowed including lands purchased pending such proceedings: *Boyd v. Negley,* 40 Pa. 377, 384. The defendant here, as in the *Boyd* case, was certainly not hurt by the amendment, for the reason that the value of the entire interest both of Burns and of the plaintiffs was fixed by the jury, under the stipulation aforesaid. The court, in appeal No. 67, accepted the verdict of the jury that it ". . . [found] Damages $50,000 Total $46,153.85 at (12/13 of $50,-000) Detention $2,769.24"; and as to No. 68 that it ". . . [found] Damage $5,000.00 (7/8 $4,375) $262.50 Detention." The appellant raises the following questions:

(1). Could the City condemn the lands of the petitioner after they had been condemned by the Commonwealth? Where a city enacts an ordinance in collabora-

tion with the Department of Highways according to its plan, the effect of which is to condemn the property, the city alone is liable for the damages due to the exercise of the power of eminent domain: *Ashley Borough Appeal,* 348 Pa. 322, 324, 35 A. 2d 74; *Glen Alden Coal Company Case,* 350 Pa. 177, 180, 38 A. 2d 37; *Henry Shenk Company v. Erie,* 352 Pa. 481, 485, 486, 43 A. 2d 99. Of course if the Commonwealth had entered the lands without the intervention of the city, the liability for damages would have been on the Commonwealth. However, the city did intervene, it adopted the plan, passed the ordinances, and made its own plans, which were offered in evidence as Exhibits 17 and 19 to show the extent of the improvement as affecting the property in question.

Therefore the question which the appellant raises must be resolved against it. In addition, the city was estopped from denying the liability assumed by its own ordinance: *Ervin v. Pittsburgh,* 339 Pa. 241, 250, 14 A. 2d 297; *Breinig et ux. v. Allegheny County,* 332 Pa. 474, 485, 2 A. 2d 842.

(2). Could the city condemn any lands of the petitioners? This must be answered in the affirmative for the reasons hereinbefore set forth, and because the alleged condemnation was not only under ordinance No. 213, but also under ordinance No. 214, which was pleaded by amendment.

(3). Could the owners of an undivided interest in the land maintain these cases without the joinder of the owner of the other undivided interest? This question is raised because of the fractional interest of Daniel J. Burns outstanding at the time of the trial. It must be resolved against the appellants both because of the stipulation and because of the fact that the Daniel J. Burns interest was acquired by the plaintiffs as previously explained, so that the plaintiffs, after ver-

dict and before judgment, were the indisputable fee simple owners of the land. On the question of the necessity for all tenants in common to appear as parties plaintiff, this Court said in *Railroad v. Boyer,* 13 Pa. 497, 500: "But although they may join, where there are several interests, either in common and in present existence, or some of them in future and expectancy, yet it follows not, that they must. Because, one might be baulked by the obstinancy of the others, or by their being bought off, or by their releasing, or because they didn't choose to proceed. . . The damages here were apportioned, the widow claiming only for the damages done to her interest, and being assessed only to that extent."

(4). Complaint is made of the charge of the court relating to market values, and as to damages for detention. Such matters were not called to the attention of the court at the close of the charge, and apparently were not raised in the motion for new trial. These constitute a waiver of the alleged errors: *Berkleu v. Jeannette,* 373 Pa. 376,    A. 2d    .

(5). Complaint is made that the plaintiffs were limited to damages for detention at a rate of three per cent., quoting from The Third Class City Code as amended by the Act of June 28, 1951, P. L. 662, §28.5, 53 PS §12198-2849, which reads: "The amount of damages allowed in a report of viewers or otherwise for the taking, injury or destruction of land or property by the city's exercise of the right of eminent domain shall, as finally confirmed, bear interest at the rate of three per centum per annum from the date of the confirmation nisi of the report." But this section of The Third Class City Code has to do with the amount of damages allowed in the report of the viewers. After an appeal from the report of viewers the said report is no longer in the case, except, of course, as furnishing

jurisdiction to the common pleas on appeal. Therefore when the award is not made on the viewers' report the interest at three per cent. per annum from the date of the confirmation nisi of the report cannot obtain. On appeal the whole matter is de novo and the general rule of damages for detention at a rate not to exceed six per cent. per annum obtains: *Fidelity-Philadelphia Trust Company v. Commonwealth,* 352 Pa. 143, 42 A. 2d 585. The owner of property taken under condemnation is entitled to compensation for delay in payment of damages, which begins to run from the date of appropriation and is to be measured by an interest rate. Where the value of land condemned is ascertained "it relates back to the time of taking, and the owner is entitled to compensation for delay in its payment, unless just cause be shown to the contrary. . . This compensation. . . is measured by an interest rate recoverable as damages. This rate will be the normal commercial rate during the period of detention. If no evidence is given as to that rate, the presumption is that the legal rate was in effect": *Whitcomb v. Philadelphia,* 264 Pa. 277, 284, 107 A. 765.

After verdicts and before judgment the plaintiffs acquired the title outstanding in Daniel J. Burns, together with an assignment of the eminent domain damages, and petitioned the court below to modify the verdict so as to give them the total amount of the respective verdicts rather than the amounts apportioned. This the court below refused to do, lacking the power. See *Gaspero v. Gentile,* 160 Pa. Superior Ct. 276, 50 A. 2d 754. The motion was renewed in this Court.

Under §2 of the Act of May 20, 1891, P. L. 101, 12 PS §1164, "The supreme court shall have the power in all cases to affirm, reverse, amend or modify a judgment. . . appealed from, and to enter such judgment, order or decree in the case as the supreme court may

deem proper and just. . ." Paragraph 8, §8 of the Act of June 24, 1895, P. L. 212, 17 PS §192, constituting the Superior Court, reads in part: "It may affirm, reverse, amend or modify any order, judgment or decree as it may think to be just. . ." Both courts have exercised that power when the facts were not in controversy: *Osterling v. Allegheny County*, 272 Pa. 458, 116 A. 385; *Whalen v. Smith, Fireproof Construction Co.*, 296 Pa. 10, 145 A. 591; *Gaspero v. Gentile*, 160 Pa. Superior Ct. 276, 50 A. 2d 754. No good purpose could be served by having a retrial as to the Burns interest later acquired by the plaintiffs, since under the stipulation the interest of all parties was valued and then apportioned among the parties plaintiff, excluding the Burns interest.

We therefore modify the judgment in No. 67 March Term, 1953, for the plaintiffs in the sum of $50,000, with damages for detention as found by the jury in the sum of $2,769.24 (thus excluding damages for detention on the Burns interest acquired subsequent to verdict) ; and in No. 68 March Term, 1953, for the plaintiffs in the sum of $5,000, with damages for detention as found by the jury in the sum of $262.50 (thus excluding damages for detention on the Burns interest acquired subsequent to verdict).

As thus modified the respective judgments are affirmed.