## Long v. Long

*Samuel D. Clapper,* for plaintiffs.
*James R. Walsh,* for defendants.

COFFROTH, *P.J.,* July 1, 1983 — This case is here on defendant's preliminary objections to plaintiffs, amended complaint in assumpsit and trespass[1]. We state and answer the issues raised as follows:

---

1 See Long et al. v. Long, (No. 1), 41 Somerset L. J. 129 (1982) ruling on preliminary objections to the original complaint.

Part I, Demurrer To Count II

The demurrer states only the generality that Count II "fails to state a cause of action" without giving any reason why that is so, in violation of Civil Rule 1028(a) which states that:

"Preliminary objections shall state specifically the grounds relied on."

Commonwealth v. Penner, 34 Somerset L. J. 364, 5 D.&C.3d 499 (1977); Spickler v. Lombardo (No. 3), 34 Somerset L. J. 131, 136 (1976); Pittsburgh National Bank v. Garrity, 31 Somerset L. J. 333 (1976); Weber v. Sipe et al., 41 Somerset L. J. 305 (1982). Although specific grounds were briefed and argued without objection by plaintiffs, the court is not bound by plaintiffs' waiver; the questions argued are technical in nature and insufficiently substantial to induce us to waive the rule. See Pittsburgh National Bank v. Garrity, supra, 336-337, on waiver. The demurrer is overruled.

Part II, Demurrer To Count III

Overruled for the same reasons stated above in respect of the demurrer to Count II.

Part III, motion to strike the averments of the amended complaint insofar as they allege "entitlement to interest, at the rate of 12 percent, as consequential damages, on the damages allegedly suffered by them [plaintiffs]".

As is apparent from defendants' brief, the only objection is to charging interest at a rate in excess of six percent per annum, not to charging interest at the latter rate.

The same question arose on preliminary objections to the original complaint where we said:

"(2) The stated amount of damages claimed includes a calculation of pre-judgment interest at the rate of 12 percent per annum on the theory that

'plaintiffs could have earned' that amount of interest on the royalties on the stripping lease had they received them in accordance with the memorandum of agreement. Plaintiffs will be entitled only to 'lawful interest' on any principal amount recovered. With few exceptions, lawful interest in Pennsylvania is six percent per annum. See: Act of 1974 P.L. 13, §201 et seq., 41 P.S. §§201 et seq., and cases there cited to §202. If plaintiffs claim in excess of that rate in the amended complaint, the factual and legal basis therefor shall be stated."

In an effort to meet that requirement, plaintiffs have inserted in the amended complaint new paragraphs 21a, 21b and 21c, the latter two of which undertake to state the basis for a claim of interest at a rate higher than six percent per annum, and read as follows:

"21b. Defendants at the time that they refused to sign the lease, as aforementioned, foresaw or in the exercise of reasonable diligence could have foreseen that in addition to the loss of royalties, plaintiffs would lose earnings on said royalties and the said defendants foresaw or could have foreseen that said loss would be at the respective market rates of interest for such sums during the period of time involved, which plaintiffs have estimated on Exhibit C at 12 percent per annum.

"21c. Interest at 12 percent per annum or at the applicable market rates for such sums of money as are involved during the time periods involved is sought as consequential damages for breach of a covenant or agreement to enter into the lease and is not sought for breach of an agreement to pay money for which, in the absence of an agreement to the contrary, the statutory rate of interest would be due. The higher rate is claimed as independent consequential damages flowing from the breach which

were or should have been foreseeable by defendants."

. Defense counsel argues that existing law imposes a six percent maximum on pre-verdict interest; plaintiffs' counsel acknowledges that the cases have generally so held, but urges us to update that notion in order to reflect a "market rate" more in line with actual rates during the period of time in question, so as to provide a fair and full measure of compensatory damages to plaintiffs.

We note here that our problem relates only to pre-verdict interest. Interest on verdicts (and judgments) is governed by Judicial Code §8101, 42 Pa. C.S., which provides as follows:

"§8101. Interest on judgments"

"Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award."

The "lawful rate" there referred to is six percent per annum as prescribed by §202 of the Act of 1974 P.L. 13, 41 P.S. §202, which provides as follows:

"§202. Legal rate of interest"

"Reference in any law or document enacted or executed heretofore or hereafter to 'legal rate of interest' and reference in any document to an obligation to pay a sum of money 'with interest' without specification of the applicable rate shall be construed to refer to the rate of interest of six percent per annum." Code §8101 supra does not bar or in any way apply to pre-verdict interest. Sack v. Feinman, 489 Pa. 152, 161, 414 A.2d 1059 (1980).

The legal rate of interest in Pennsylvania, in the absence of an express contract for a lower rate,

in cases not covered by a specific statute to the contrary, is six percent per annum. PLE, Interest and Usury, §21. The standard six percent rate is contained in §201 of the Act of 1974 P.L. 13, 41 P.S., which provides as follows:

"§201. Maximum lawful interest rate"

"Except as provided in Article III of this act, the maximum lawful rate of interest for the loan or use of money in an amount of fifty thousand dollars ($50,000) or less in all cases where no express contract shall have been made for a less rate shall be six percent per annum."[2]

The first significant feature of §201 is that it applies only to "interest for the loan or use of money". The phrase "loan. . . . of money" is clear; it refers to those cases in which the parties create a debt which "involves the relationship of debtor and creditor, of borrower and lender, and ordinarily signifies an exchange of cash [money] for a promise to return it with an increment of interest, and where money is paid with the intent that the person receiving it shall have unrestricted use thereof, being liable to

---

2. The predecessor to §201 was the Act of 1858 P.L. 622 §1 as amended, 41 P.S. §3, from which the operative language of §201 was taken. The former act also states that: "The lawful rate of interest for the loan or use of money in an amount of less than Fifty Thousand ($50,000.00) Dollars, in all cases where no express contract shall have been made for a less rate, shall be six percent per annum, except with respect to . . . . [exceptions inapplicable]."

The exceptions of Article III referred to in §201 are inapplicable. There are also a number of other exceptions contained in other statutes which provide for other rates of lawful interest in special situations, not relevant here. See, for example: Uniform Commercial Code, §3118(4) and §3122(d), commercial paper; 40 P.S. §1009.106(a) (2), overdue no-fault benefit payments bear interest at 18 percent; PLE, Interest and Usury §21, citing other instances.

[repay] a similar amount. . . ." 26 CJS, Debt page 3. The disjunctive clause "or use of money" is not quite so clear; but the tenor of the authorities is that it is a synonym for "loan", Kenin Trust (No. 1), 343 Pa. 549, 563 note 4 (1942), intended to cover cases whose form may vary from that of a typical loan but whose substance is a loan, that is, "the hire of money", Melnicoff v. Huber Investment Co., 12 D.&C. 405, 407 (1929), cited with approval in Equitable Credit & Discount Co. v. Geier, 342 Pa. 445, 455 note 7, 22 A.2d 53, 58 (1941) and Equipment Finance, Inc. v. Grannas, 207 Pa. Super. 363, 366, 218 A.2d 81, 82 (1966). The latter cases hold that the usury statutes do not apply to bona fide sale transactions, even though a money obligation arises therefrom and may bear interest for delayed payment which in a broad sense is "interest for the . . . use of money". Accord, Dear v. Holly Jon Equipment Co., 283 Pa. Super. 74, 423 A.2d 721 (1980). Accordingly, the statute is inapplicable to the price or value payable for property or services; usury has always been associated with the lending of money; unless there is a loan there can be no usury. Melnicoff, supra, 406-407, and headnote 1.[3] A loan of money being "the hire of money", a loan transac-

---

3. Restatement of Contracts §526 provides as follows:

"§526. Definition of Usurious Bargain.

"A bargain under which a greater profit than is permitted by law is paid, or is agreed to be paid to a creditor by or on behalf of the debtor for a loan of money, or for extending the maturity of a pecuniary debt, is usurious and illegal."

Comment b thereto states in part that: "The following are the essentials of usury: 1, a loan or agreement for forbearance; 2, the loan, extended debt, or claim forborne must be of money or something circulating as money; 3, the debt must be unconditionally repayable; 4, something must be exacted or promised for the use of the money in excess of and in addition to the highest amount of interest permitted by law."

tion is analogous to a renting of property. "Interest has been defined as the rental price of money . . ." CJS Interest and Usury §3 at note 43. Interest "bears the same relation to . . . [money] that rent does to land." Kenin Trust (No. 1), supra, 564; CJS, supra §5 at notes 10-11. Rent is compensation for the rightful use of property let, see Commonwealth v. Kitchen Appliance Distributors, Inc. (No. 3), 41 Somerset L. J. 382, 387 (1982), and is therefore distinguished from interest as damages for wrongful detention.

The instant case does not in any sense involve a loan; the assumpsit count is for breach of contract for failure to join in a coal stripping lease for royalties allegedly lost, and the other count is in trespass for damages for intentional interference with

---

" 'Forbearance' is a contractual obligation of a creditor to forbear during a given period to require of the debtor payment of an existing debt then due and payable." CJS, Interest and Usury §131a. Such a contract is merely an extension of a debt's maturity; and such a forbearance or extension of debt is recognized as within the usury statute in §526 supra, and in Equipment Finance, Inc. v. Grannas, supra, 366. In the instant case we need not undertake to probe the ramifications of usury in forbearance cases.

In Schmuck v. King Coal., (101 Civil 1981, opinion of 8-16-82) we held that the six percent legal rate of §201 was applicable to an unpaid balance for hauling service in which the issue was whether the claimant could recover a service charge of one and one-half percent or only interest at the legal rate. We held the latter, there being no contract for the service charge. In so doing, we said: "Although plaintiff does not claim 'interest for the loan . . . of money', the service charge is in substance 'interest for the . . . use of money' within the language of the statute [§201]." That dictum is incorrect under our present analysis, although the result reached was correct; instead of falling within the language of §201, the legal rate was applicable as damage-interest by judicial decisions under the rule of paragraph A5 of Part III of this opinion.

contractual relation (Restatement (Second) of Torts § 766B).[4] Hence, the instant case does not fall within the mandate of the statutory language of §§201-202. But we cannot on that account dismiss the statute, because there are certain types of non-loan claims for money which bear interest and which by judicial ruling bear interest at the legal rate, and others where the interest rate lies within the equitable discretion of the court; so our present inquiry must go further in ascertaining the rules of law governing liability for interest in non-loan claims.

The authorities expound a theory of interest which distinguishes between conventional interest and interest as damages for delay in payment. The common definition of interest describes it as a compensation allowed by law, or fixed by the parties, for the use or forbearance of money, or as damages for its detention. CJS, supra, §3; PLE, Interest and Usury §2. "Interest has been distinguished from damages, in that interest is the rental for money of another, while damages are the compensation for injury." CJS, supra, §5 at note 95. In the latter case: "It is a legal and uniform rate of damages allowed, in the absence of any express contract, when payment is withheld, after it has become the duty of the debtor to discharge the debt." Minard v. Beans, 64 Pa. 411, 413 (1870); PLE, supra §2 at note 5. Thus in distinguishing rent-interest from damage-interest, we find the authorities referring to the former as "interest as such" as in Marazzo v. Scranton Nehi

---

4. Moreover, the principal claim here is for more than $50,000. In the case of a loan or forbearance of money of more than $50,000 we construe §§201-202 as prescribing the legal six percent rate of interest unless the loan contract expressly prescribes a higher rate. See Guardian Bank & Trust Co. Case, 330 Pa. 411, 416 A.2d (1938).

Bottling Co., Inc., 438 Pa. 72, 75, 263 A.2d 336 (1970), quoting Richards v. Citizens Natural Gas Co., 130 Pa. 37, 40 (1889), or as "interest eo nomine" as in Kenin Trust (No. 1), supra, 566 (emphasis in original),[5] or as "conventional interest" payable by agreement of the parties (CJS, supra §3 at note 65).

"If the parties have agreed on the payment of interest, it is payable not as damages but pursuant to a contractual duty that is enforceable as is any other such duty, subject to legal restrictions on the rate of interest." Restatement (Second) of Contracts §354, Comment a.

"There is an obvious distinction between interest awarded by the terms of a contract and interest awarded by way of damages for breach of the contract, although the recovery in both cases is frequently spoken of as a recovery of interest. Interest as such, however, . . . is recoverable only under the terms of the contract during the continuation thereof." CJS, Damages, §52, page 793; see also Hummel v. Brown, 24 Pa. 310, 313 (1855).

Thus, interest "as such" or "eo nomine" or "conventional interest" means interest imposed by contract of the parties as distinguished from interest imposed as damages by court decree. So, in strict theory, any interest allowed after money becomes due, as distinguished from pre-maturity interest, is not interest but damages in the nature of interest, unless it is provided for by contract.[6]

---

5. "Eo nomine" means: by or under that name. See CJS, Eo, at note 23.

6. Interest on a verdict or judgment is true interest as such, not damages. Roos v. Silk Mills, 342 Pa. 81, 19 A.2d 137 (1941). See also note [6].

While the foregoing distinction between conventional interest payable by contract, and damage interest imposed by law, is helpful to understanding, it is not an infallible guide to liability for pre-verdict (pre-judgment) interest, and has been criticized as a basis for the rules of law governing liability for pre-verdict interest which have developed over the years. See: Hussey Metals Division v. Lectromelt Furnace Division, 417 F.S. 964, 967 (W.D. Pa. 1976); Peterson v. Crown Financial Corp., 661 F.2d 287, 294 (CA. 3, 1981); 75 Dickinson L.R. at 96 et seq.

"Whether or not prejudgment interest is recoverable under Pennsylvania law, which controls this case, is not readily generalized." Hussey, supra, 966. "The law of Pennsylvania with respect to the rate of prejudgment interest is far from perspicuous." Peterson, supra, 293. "An examination of the cases dealing with the charge and allowance of interest will disclose many difficulties . . ." McDermott v. McDermott, infra, 130 Pa. Super. at 130. Despite the unperspicuous difficulties, the following principles can be derived from the authorities:

A. Interest on Sums Due for Breach of Contract:

1. A contractual promise to pay interest is enforceable as any other contractual promise, provided that the rate does not exceed that allowable by law. Comment a. of Restatement of Contracts §337 states in part:

"In cases where it is promised, interest is an agreed compensation for consideration received; and it is payable because it is promised and not as reparation for a previous breach of duty. If it is not illegal under the usury statute or unenforceable under some other general rule of law, a promise to pay interest, whether simple interest or compound in-

terest, is enforceable like other promises to pay money."

Comment a. of Restatement (Second) of Contracts §354 states in part:

"If the parties have agreed on the payment of interest, it is payable not as damages but pursuant to a contract duty that is enforceable as is any other such duty, subject to legal restrictions on the rate of interest."

Under §201 of the 1974 statute quoted ante, a higher rate is payable only on loans in excess of $50,000 and only if the promise to pay such rate is express. See note [3] ante. The two types of interest may be described as contract-interest (or rent-interest) and damage-interest.

2. A contract which provides for payment of interest without stating the rate thereof shall be construed to require payment of six percent per annum. Section 202, Act of 1974, quoted ante.

3. A loan contract which contains no provision for interest will be presumed to require payment of pre-maturity interest at the legal rate, absent provision to the contrary.[7]

---

7. See: Hodge v. Me-Bee Co., Inc., 429 Pa. 585, 240 A.2d 818 (1968); Nicolazzo Estate, 414 Pa. 186, 187 note 1, 199 A.2d 455 (1964); Harris v. Mercur (No. 2) 202 Pa. 318, 51 Atl. 971 (1902); Stocker v. Hutter, 134 Pa. 19, 19 Atl. 433 (1890); Pittsburgh National Bank of Commerce v. McMurray, 98 Pa. 538 (1881); Borough of Port Royal v. Graham, 84 Pa. 426 (1877); Lessee of Dilworth v. Sinderling, 1 Binney 488 (1808); Repelje v. Emory, 1 Dallas 349 (1788). Compare: Mack Paving & Contracting Co. v. American Pipe & Construction Co., 283 Pa. 449, 129 Atl. 329 (1925), pre-maturity interest denied on non-loan contract; Minard v. Beans, supra.

There are cases which say that the implied duty to pay pre-maturity interest on money lent is an implication or presumption of law. See: Stocker v. Hutter, surpa. 29; Borough of Port Royal v. Graham, supra, 429. Such language suggests a man-

4. Where a contract provides for interest on a loan "until paid", or similar language, at a rate less than the legal rate, the agreed rate applies only to pre-maturity interest; post-maturity interest is payable at the legal rate absent contractual language to the contrary. Wright v. Hanna, 210 Pa. 349, 59 Atl. 119 (1904); see also: Miller v. Reading, 369 Pa. 471, 87 A.2d 223 (1952); Ludwick v. Huntzinger, 5 W&S 60 (1842). The pre-maturity interest is contract-interest for the rightful use of the money, whereas the post-maturity interest is damages allowed by law for breach of contract for wrongful detention after maturity of the money loaned. See: Nagle Engine and Boiler Works v. Erie, 350 Pa. 158, 38 A.2d 225 (1944), headnote 4; Ludwick v. Huntzinger, supra, 60.

5. Absent contrary contractual provision, post-maturity interest at the legal rate is payable to the obligee as a matter of right, as damages for breach of contract for payment of any definite or readily calculable sum, loan or otherwise, even though

datory rule or unrebuttable presumption of law imposed irrespective of the consent of the parties, as in quasi-contract law. See: Beroes v. Haberman, 40 Somerset L.J. 265, 271 (1982); Kramer v. Madston, 38 Somerset L.J. 316, 324-326 (1978). But we think that the presumption is really based on an inference of fact that the parties most likely intended pre-maturity interest and not an interest-free loan, consistent with normal business usage and our prevailing societal consensus. Compare: West Republic Mining Co. v. Jones & Laughlin, 108 Pa. 55, 69 (1884); Watt & Co. v. Hoch, 25 Pa. 411 (1855); Adams v. Palmer, 30 Pa. 346 (1858). This is also consistent with the statement in note 2 of Hodge supra disapproving any prior judicial language to the effect that the presumption is "irrebuttable". See also Harris v. Mercur (No. 2), supra, an action on a contract which contained no provision for interest on money advanced, in which the court held defendant liable for interest, saying (323): "His contract makes him liable for both [principal and pre-maturity interest]."

disputed.[8] The rule is stated in Restatement of Contracts (1932) §337 as follows:

"§337. When Interest is Recoverable as Damages."

"If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:

---

8. Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc., 461 Pa. 407, 336 A.2d 609 (1975); Palmgreen v. Palmer's Garage, Inc., 383 Pa. 105, 117 A.2d 721 (1955); Barium Steel Corp. v. Wiley, 379 Pa. 38, 108 A.2d 336 (1954); West Republic Mining Co. v. Jones & Laughlin, supra; Minard v. Beans, supra; Kelsey v. Murphy, 30 Pa. 340, 341 (1858); Oxford Manufacturing Co. v. Cliff House Building Corp., 224 Pa. Super. 387, 307 A.2d 343 (1973); J. Purdy Cope Hotels Co. v. Fidelity-Phoenix Fire Insurance Co., 126 Pa. Super. 260, 190 Atl. 636 (1937); Gloecker v. Imrie, 118 Pa. Super. 441, 179 Atl. 883 (1935); Swindell-Dressler Co. v. Commonwealth, 50 Pa. Commw. 464, 413 A.2d 38 (1980); Lerner v. Workmen's Compensation Appeal Board, 35 Pa. Commw. 300, 386 A.2d 1038 (1978); Commonwealth v. Berger, 11 Pa. Commw. 332, 312 A.2d 100 (1973); Concerned Residents of Stoughton Lake v. Stoughton, 331 Civil 1980, opinion of 1-25-82 (Shaulis, J.)

A demand obligation becomes due when demand is made, or when suit is brought if there is no prior demand. Carbondale City School District v. Fidelity & Deposit Co. of Maryland, 346 Pa. 491, 31 A.2d 279 (1943).

The requirement that the sum payable be definite, liquidated, or readily susceptible of calculation should not be taken too literally or applied strictly. The requirement is satisfied if there is some reasonably definite standard for determining the amount due, such as a market or prevailing value of goods or services. See: Schwartz v. Luletsky, 25 D.&C.3d 159 (1982); Ben Construction Co. v. Duquesne Sanitary Authority, 424 Pa. 40, 225 A.2d 886 (1967); Eazer Express, Inc. v. International Brotherhood of Teamsters, 520 F.2d 951 (CA. 3, 1975); Commonwealth v. National Union Fire Insurance Co., 434 Pa. 235, 252 A.2d 593 (1969); Gloecker v. Imrie, supra; paragraph B1 infra.

(a) Where defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which defendant may be entitled.

(b) Where the contract that is broken is of a kind not specified in Clause (a), interest may be allowed in the discretion of the court, if justice requires it, on the amount that would have been just compensation if it had been paid when performance was due."

Clause (a) is approved in Penneys v. Pennsylvania Railroad Co., 408 Pa. 276, 183 A.2d 544 (1962). Restatement (Second) of Contracts §354 states the rule somewhat differently.

"§354. Interest as Damages"

"(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due."[9]

---

9. The right to damages in the nature of interest (or interest in the nature of damages) at the legal rate applies only when there is a wrongful nonpayment in breach of contract; where the claimant has assented to post-maturity detention of the money owed, interest was awarded "at the same rate of interest earned by decedent's [debtor's] savings account during

Although §354 omits the provisions of §337 that the rule applies "if the parties have not by contract determined otherwise", and that the rate payable is "simple interest at the statutory legal rate", inclusion of those elements is recognized in Comment a. to §354.

6. The foregoing rules, applicable only to claims for money for breach of contract, will not apply to a contract whose breach sounds in tort; thus in Girard Trust Corn Exchange Bank v. Brink's, Inc., 422 Pa. 48, 220 A.2d 827 (1966), the court denied interest in an assumpsit action on a bailment contract whose breach depended on proof of negligence. Such cases are governed by tort interest rules, infra.

B. Interest on Sums Due for Tortious Conduct:

1. Interest is allowed on money damages in tort cases where unliquidated damages are ascertainable or measurable by definite standards, such as the market value of property.[10] In such cases, in order to compensate claimant for the value of the property as of the date of loss, the fact finder may but is not required to allow additional damages in the nature of interest as compensation for culpable delay at a rate not exceeding the legal rate of six percent per annum. Marazzo v. Scranton Nehi Bottling Co., Inc., supra; Richard v. Citizens Natural

---

that period of time" instead of the interest rate available to him or the legal rate. Keener Estate, 413 Pa. 267, 270, 196 A.2d 321 (1964), claim for unpaid balance of purchase money owed by decedent on contract for purchase of land from claimant. Such an equitable approach follows Restatement of Contracts §337(b) and Restatement (Second) of Contracts §354(2) supra. See also paragraph G1 of the opinion.

10. "The search is for a meaningful and objective economic referant to which monetary valuation may be fairly harnessed." Ankney v. Penelec, 31 Somerset L.J. 253, 265 (1975).

Gas Co., supra; "Allowance of 'Interest' on Unliquidated Tort Damages in Pennsylvania", 75 Dickinson L.R. 79 (1970). "Such are cases of the unintentional conversion and destruction of property, etc." Marazzo, 74. No such damage-interest is allowable on damage sums for personal injury which are assessed as of the date of trial, not date of injury. McGonnell v. Pittsburgh Railway, 234 Pa. 346, 399-400, 83 Atl. 282, 283 (1911); 75 Dickinson L.R. supra, 91 at note 74 and 93. Compare Civil Rule 238, paragraph 12 infra.

2. The rule is stated in Restatement (Second) of Torts §913 as follows:

"§913. Interest"

"(1) Except when plaintiff can and does elect the restitutional measure of recovery, he is entitled to interest upon the amount found due

(a) for the taking or detention of land, chattels, or other subjects of property, or the destruction of any legally protected interest in them, when the valuation can be ascertained from established market prices, from the time adopted for their valuation to the time of judgment, or

(b) except as stated in Subsection (2), for other harms to pecuniary interests from the time of the accrual of the cause of action to the time of judgment, if the payment of interest is required to avoid an injustice.

(2) Interest is not allowed upon an amount found due for bodily harm, for emotional distress or for injury to reputation, but the time that has elapsed between the harm and the trial can be considered in determining the amount of damages."

This section appears to make tort damage-interest a matter of right, contrary to Marazzo.

C. Interest In Actions For Restitution:

1. In restitutional actions, "in order to prevent unjust enrichment or where payment of interest is required to avoid injustice. . . . the decision whether to award interest and the amount of such interest, is vested in the discretion of the chancellor." Sack v. Feinman, supra, 165. " 'Hence, any claim based upon unjust enrichment or restitution, rather than upon compensation or damages, not only permits pre-judgment interest, but also permits an award of compound interest.' ". Id. 163. This rule has been construed as meaning that in restitutional actions for unjust enrichment " . . . the court has the descretion to award damages in the nature of pre-judgment interest at a higher than the six percent legal rate." Peterson v. Crown Financial Corp., supra, 297. See also: Keener Estate, 413 Pa. 267, 196 A.2d 321 (1964), interest allowed at the same amount earned by the obligor who retained claimant's money with claimant's assent; Miller v. Miller, 35 Somerset L.J. 2 (1977), interest denied to both parties.

2. The applicable rules are stated in Restatement of Restitution, §§156-157, as follows:

"§156. Interest."

"Subject to the rules stated in §157, a person who has a duty to pay the value of a benefit which he has received, is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution if, and only if:

(a) the benefit consisted of a definite sum of money or

(b) the value of the benefit can be ascertained by mathematical calculation from the terms of an agreement between the parties or by established market prices, or

(c) payment of interest is required to avoid injustice."

"§ 157. Restitution Of Direct Product And Compensation For Use."

"(1) A person under a duty to another to make restitution of property received by him or of its value is under a duty

(a) to account for the direct product of the subject matter received while in his possession, and

(b) to pay such additional amount as compensation for the use of the subject matter as will be just to both parties in view of the fault, if any, of either or both of them.

(2) The rule stated in Subsection (1) is applicable to an action brought solely to recover the income or value of the use of the subject matter, or interest upon the amount of its value."

D. Interest In Eminent Domain Cases:

1. "Compensation for delay in payment shall, however, be paid at the rate of six percent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation . . . " Eminent Domain Code of 1961, §611, 26 P.S. §1-611. This provision is complicated by the overriding constitutional requirement that the condemnee be paid just compensation. We have held that fair delay compensation in the nature of interest is a constitutional right in eminent domain, and that the statute is unconstitutional to the extent it may prohibit adequate delay compensation when the condemnee's post-taking possession is materially limited by the taking and is less than normal or full. Hay v. Commonwealth, 39 Somerset L. J. 393, 399,

21 D.&C.3d 567 (1980); compare Dodson v. Ann Arundel County, 451 A.2d 317 (Md. 1982).

2. For the same constitutional reasons, it is arguable, that a fixed six percent interest rate is not just compensation in times when prevailing interest rates are higher, especially in light of pre-Code law that the award of just conpensation must include delay conpensation " . . . measured by an interest rate recoverable as damages. This rate will be the normal commercial rate during the period of detention. If no evidence is given as to the rate, the presumption is that the legal rate was in effect." Whitcomb v. Philadelphia, 264 Pa. 277, 284, 107 Atl. 765 (1919); Adams v. New Kensington, 374 Pa. 104, 111, 97 A.2d 354 (1953). In Dodson, supra, the court refused to increase the six percent legal rate, notwithstanding higher prevailing rates, because under Maryland law interest is not included in constitutional just compensation.

E. Interest In Equitable Property Division in Divorce:

1. Provisions of Divorce Code §401 (d) governing equitable property division, defining as marital property in some instances "the increase in value during marriage", refers to the market value of property other than money and cannot include as award against a party to pay interest on money held by the other or both parties, as distinguished from interest actually earned thereon. Clapper v. Clapper, 41 Somerset L. J. 215, 221, 25 D.&C.3d 467, 475 (1982). Compare Kleinfelter v. Kleinfelter, 18 Centre Co. L. J. 79 (1983), interest allowed on pecuniary sum found payable in award in equitable property division in divorce as enforcement measure, but only at six percent. See also King v. King, no. 183 Divorce 1980, order of 7-13-83.

F. Liability Of Commonwealth For Interest On Sums Payable.

1. The traditional rule that the Commonwealth is not liable for interest on sums payable by it unless bound by statute or contract to do so, being closely akin to the abolished doctrine of sovereign immunity, the Commonwealth should be subject to the same liability for interest as any other party in a mandamus action which is governed by equitable principles. City of Pittsburgh v. Pennsylvania Department of Transportation, 490 Pa. 264, 416 A.2d 461 (1980); see also: Allegheny County Police Pension Fund v. Casey, 476 Pa. 261, 382 A.2d 461 (1978). Judicial Code §8521 et seq., have restored sovereign immunity with specified exceptions, see particularly §8528(c) specifying the types of damage recoverable in which interest is not mentioned. Compare also the Commonwealth's statutory liability for delay damage in the nature of interest in eminent domain cases, paragraph D supra.

G. Allowance Of Interest In Other Cases:

1. Equity Actions: Absent a rule for interest clearly established by statute or case law, interest should be awarded according to principles of equity as justice requires. In McDermott v. McDermott, 130 Pa. Super. 127, 130, 196 Atl. 889 (1938), an action in equity for partition, the court said:

"An examination of the cases dealing with the charge and allowance of interest will disclose many difficulties, but the decided trend of courts of law and courts of equity has been 'to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case': John Agnew Co. v. Board of Education, 83 N. J. Eq. 49, 89 A. 1046, 1054. Unless a case be found, which is a conclusive precedent, the safest and at the same

time the fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing. We have been referred to no precedent that is controlling."

Quoted with approval in: Murray Hill Estates, Inc. v. Bastin, 442 Pa. 405, 410, 276 A.2d 542 (1971), action in equity for specific performance; Wright v. Buckeye Coal Co., 290 Pa. Super. 231, 241, 434 A.2d 728 (1981), equity action for mine subsidence: Wade v. S. J. Groves & Sons Co., 283 Pa. Super. 464, 478, 424 A.2d 902(1981), equity action for injunctive relief and damages from silt and debris. In Remic v. Berlin, 284 Pa. Super. 489, 492, 426 A.2d 153 (1981), action in equity for partnership dissolution, the court similarly stated:

"The safest and fairest way for a court to decide questions pertaining to interest is according to a plain and simple consideration of justice and fair dealing."

See also: Miller v. Miller, supra; Massachusetts Bonding & Insurance Co. v. Johnson & Harder, Inc., 348 Pa. 512, 35 A.2d 721 (1943); Kenin Trust (No. 1) supra; Lewis Estate, 349 Pa. 455, 37 A.2d 559 (1944); Jones Estate, 400 Pa. 545, 162 A.2d 408 (1960); Easer Express, Inc. v. International Brotherhood of Teamsters, 520 F.2d 951 (CA. 3, 1975); Paragraph C supra, restitution.

2. Actions At Law: In most law actions such as assumpsit and trespass, there is fixed precedent for allowance or nonallowance of interest in accordance with the rules previously stated in paragraphs A and B. But the equitable principles of McDermott supra are applicable in actions at law which are governed by equitable principle such as mandamus, City of Pittsburgh v. Pennsylvania Department of Transportation, supra; see also Auditors v. County Com-

missioners, 28 Somerset L. J. 158, 161 (1972), on the equitable nature of mandamus.

3. The foregoing equitable principles apply to both the question of entitlement to interest, and to the rate (where rate is not fixed by statute or precedent). See Sack v. Feinman, supra, paragraph C1. It is the "existence or absence of fault between the parties" in causing delay which is most often crucial in determining liability for damage-interest. Wade v. S.J. Groves & Sons Co., supra, 479, where the court also said:

"Thus, fault continues to be the key concept which should be kept in mind by the trial court. . . .

4. The foregoing principles are consistent with Restatement of Contracts §337(b), Restatement of (Second) Contracts §354(2), Restatement (Second) of Torts §913(1)(b) and Restatement of Restitution §156(c), all quoted ante in this opinion.

H. Interest As Out-Of-Pocket Consequential Damage:

1. In an action by buyer v. seller for damages for breach of contract for sale of a computer, interest charges paid by the buyer to make the purchase were allowed as an item of consequential damage where the price of the computer was such that the seller had reason to know that the buyer would borrow money to make the purchase. Carl Beasley Ford, Inc. v. Borroughs Corp., 361 F.S. 325 (E.D., Pa., 1973), headnote 10, affirmed 493 F.2d 1400 (CA. 3, 1974). The distinction noted in Gary v. Masterson, 38 Somerset L. J. 347, 377 (1979), between damages for "losses caused" and damages for "gains prevented" applies here.

I. Effect Of Pre-Verdict Tender:

1. Contract Cases: In contract cases, pre-verdict interest on definite or readily calculable sums from date due being a matter of right, the only way the

debtor can relieve himself from liability for continuing interest is to tender payment of the amount due plus interest, even though there is a bona fide dispute; if tender falls short of the sum found due at the time of tender, interest runs on the whole. Gold & Co. v. Northeast Theater Corp., 281 Pa. Super. 69, 421 A.2d 1151 (1980).

2. Tort Cases:

a. Prior to promulgation of Civil Rule 238, allowance of interest in tort cases on liquidated or readily calculable sums (not exceeding the legal rate) rested with the fact finder. See paragraph B supra. The chief determinant was fault or responsibility for delay. See: Wade v. S.J. Groves & Sons Co., supra, paragraph G1. Plaintiff could be found responsible for the delay by making such an excessive demand on defendant that it would be unfair to expect him to settle, Wright v. Buckeye Coal Co., supra, 243; Pierce v. Lehigh Valley Coal Co. (No. 2). 232 Pa. 170, 172, 81 Atl. 142 (1911), cited and quoted in Wade supra 310.

b. Civil Rule 238, effective April 15, 1979, provides that "(a) . . . in an action seeking monetary relief for bodily injury, death or property damage the Court. . . . shall (1) add to the amount of compensatory damages . . . damages for delay at ten (10%) percent per annum, not compounded . . . [and] (2) compute the damages for delay from the date plaintiff filed the initial complaint in the action or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision", provided that "[e] If a defendant at any time prior to trial makes a written offer of settlement in a specific sum with prompt cash payment to plaintiff, and continues that offer until commencement of trial, but the offer is not accepted and plaintiff does not recover by award, verdict or deci-

sion, exclusive of damages for delay, more than 125% of the offer, the court or the arbitrators shall not award damages for delay for the period after the date the offer was made." The rule does not apply to eminent domain proceedings, nor to "pending actions in which damages for delay are allowable in the absence of this rule" (the note cites Marazzo, supra).[11] The power of the Supreme Court to make the rule was upheld in Laudenberger v. Port Authority of Allegheny, 496 Pa. 52, 436 A.2d 147 (1981). The explanatory comments to the rule as proposed make it reasonabley clear that the rule has the dual purpose of compensation and sanction. Id. 58.

3. Equity Cases: See McCornak v. Sharples, 254 Pa. 541, 99 Atl. 155 (1916).

J. Maximum Legal Interest Rate As Minimum:

By the express terms of §202 of the 1974 Act, quoted ante page 4, whenever a contract or document calls for the payment of interest without specifying the rate, the legal rate of six percent applies as a matter of law, See subparagraph A4 ante page 159. Thus, in such cases the maximum legal rate of interest becomes also a mandated minimum, without inquiry into whether prevailing interest rates might be significantly different in an effort to provide damage-interest which is more truly compensatory.

2. Section 3543 of the Probate Code, 20 Pa. C.S., prescribes a three percent interest rate on pecuniary legacies and specific legacies and devises, absent

---

11. Query: Since Rule 238 apparently applies to subsequent actions in which delay damages were allowable in the absence of the rule as in Marazzo supra, does the rule preclude allowance of Marazzo interest in such cases? See Wade v. S. J. Groves & Sons. Co., supra 480.

other testamentary direction, which is both maximum and minimum.

3. Section 3544 of the Probate Code, 20 C.S., imposes interest liability for breach of trust with respect to estate assets "not exceeding the legal rate", thus establishing a maximum only. See also Kenin Trust (No. 1), supra.

4. Section 611 of the Eminent Domain Code, 26 P.S. §1-611, prescribes a six percent rate of delay compensation as a matter of right, and therefore establishes both minimum and maximum. Prior law was that delay compensation in such cases should not exceed six percent, that is, a maximum only. Adams v. New Kensington, supra, 111. See paragraph D supra.

5. The interest rules for tort cases (paragraph B supra) establish a maximum only, and for restitutional cases (paragraph C supra) establish neither maximum nor minimum (as presently construed). But see Civil Rule 238, paragraph 12 supra.

Several recent federal cases applying Pennsylvania law support our conclusions. In Formigli v. Fox, 348 F.S. 629 (E.D., Pa., 1972) an action for money due under a construction contract, plaintiff asked the court to award interest at the rate of seven-eight tenths percent in light of money market rates prevailing during the period in question. The claim was refused on the basis of Pennsylvania decisions in contract cases uniformly applying the six percent legal rate. In Peterson v. Crown Financial Corp., 498 F.S. 1177 (E.D., Pa. 1980), an action to recover money paid to defendant on notes, as wrongfully demanded by defendant, plaintiff requested interest at money market rates (eight and one half percent to twelve and one half percent) during the period of detention, The evidence established that by reason of the detention, plaintiff was obliged to borrow

money (for other purposes) at the interest rates demanded (not alleged in the instant case). The court refused the claim saying that, although there is "considerable logic" in plaintiff's contention, Pennsylvania law mandates the six percent legal rate in contract cases. On appeal, 661 F.2d 287 (CA. 3, 1981), the court reversed and remanded for reconsideration of the interest rate because the case was restitutional in character to which the legal rate was inapplicable under Sack v. Feinman, supra (see paragraph C ante).

In the instant case, we assume that the sums of damage claimed are readily calculable and liquidated within the meaning of the applicable rules, in both counts of the complaint, in light of the concession by both parties that interest is payable. The sum payable under Count I, being a sum due under a contract, will bear damage-interest at the fixed legal rate of six percent per annum (see paragraph A5 supra); the sum due as tort damages in Count II will bear damage-interest at a rate not exceeding six percent per annum to be determined by the fact finder (see paragraph B supra).[12]

Although plaintiffs' claim for post-maturity pre-verdict damage-interest at a prevailing market rate rather than the legal rate has arguable merit, see Kenin Trust (No. 1) supra and Gregorius v. Safeway Steel Scaffolds Co., 409 Pa. 578, 586, 187 A.2d 646 (1963), dissenting opinion, particularly in light of the fact that the legal rate statute is applicable not by its terms but by judicial decisions, the holdings of those decisions are clearly against it in this type of

12. The separate counts of the complaint state alternative claims. On the question of handling alternative claims at trial, see Gary v. Masterson, 38 Somerset L.J. 347, 384 (1979).

case. Adherence to the legal rate, whether as maximum only or as both minimum and maximum, is of course, a rule of convenience; that is especially apparent in these days of rapidly fluctuating interest rates in the money market when special proof of prevailing rates for particular periods would complicate litigation in a matter incidental to the main task of adjudicating liability for the principal sum. But such adherence to the legal rate is more than a rule of convenience: it is an expression of a strong and long-standing public policy of preference for moderate and controlled interest rates, indeed of an antagonism to high interest, based not only on history but also on the strong strain of consumerism lately present in our society. We are not inclined to disregard those policies, and the rules which support them, in the name of a more refined or precise economic justice based on interest rate fluctuations in the money market, some of which themselves seem unjust.

Part IV: Motion for more specific complaint in order to disclose a more factual basis or method used to calculate the damages claimed.

Plaintiffs' position as set forth in the brief is that this identical issue was raised by defendants' original preliminary objection to the original complaint, was ruled on in our prior opinion of August 5, 1982, and is therefore res judicata; they also assert that if we should want to reconsider the matter we should relegate defendants to discovery as the best method of obtaining the damage information sought.

We cannot agree that the present preliminary objection to the amended complaint raises the identical issue as previously raised, nor that we previously ruled on that issue. The first preliminary objections stated that (paragraph 12): "Plaintiffs allege, in paragraphs 21 and 26 of the complaint, damages in

excess of $1,268,739"; we construed that objection as being aimed only at the claim for damages in excess of the certain sum stated, as is apparent from our ruling thereon, as follows 42 Somerset L.J. at 148):

"(1) Although paragraphs 21 and 26 of the complaint in no. 493 allege that plaintiffs have suffered damages 'in an amount in excess of $1,268,739', the prayers for relief in both counts of the complaint claim only that stated amount, plus interest thereon, and Exhibit C showing the calculation supports only that amount. Hence we do not construe the complaint as claiming any such excess other than the interest mentioned. If any excess is claimed, the complaint must be amended to detail it. See: J. Reisman and Sons v. Snyder's Potato Chips, 31 Somerset L. J. 77, 112 et seq. (1975)."

The present objections differ in language; paragraph 8 thereof (substituted for former paragraph 12 above quoted) now states: "Plaintiffs allege, in paragraphs 21, 21(a), 35 and 41, entitlement to a *certain sum* as alleged damages for the claimed wrongful conduct of defendants." (Emphasis added.) The *certain sum* referred to is the same $1,268,739 pleaded in the original complaint, which we did not undertake to rule upon in the former opinion as above stated. Nevertheless, since the amended complaint did not alter the specific sum claimed in the original complaint, defendants should have challenged the specific sum in their initial objections as required by Civil Rule 1028(b), which states that: "All preliminary objections shall be raised at one time."[13] Hence, any preliminary ob-

13. We note that the certain sum claimed in paragraph 21a of the amended complaint (Count I) is $1,173,920 instead of $1,268,739 as originally pleaded, but the latter figure contin-

jections which could have been timely made and were not so made are waived, and may not be made later. As plainly stated in Goodrich Amram 2d §1029(b):1 (pages 242-243):

"Rule 128(b) prescribes that all preliminary objections shall be raised at one time. The requirement that defendant must raise every possible preliminary objection at one time, under penalty of a waiver of certain types of objection not so raised, is essential to the scheme of these rules. Without it, the restriction to the single dilatory stage would be ineffective. Objections to an amended complaint may not include matters which appeared in the original.

"The court may, however, on its own motion require the filing of a more specific complaint, or the correction of some other defect in the pleading whether or not it has been raised by the parties." Compare Pittsburgh National Bank v. Garrity, supra. 335.

We are not inclined to act on this objection on our own motion; although the complaint is not as clear as it should be and would bear clarification as to the manner of calculation of the specific sum claimed, we agree that the most practical and efficient way in this case is to remand the parties to discovery on this issue. Discovery is especially suitable since no other amendment is required. As between amendment of pleadings and discovery, we take the practical approach. See J. Reisman & Sons, Inc. v. Snyder's Potato Chips, 31 Somerset L. J. 77, 114-115 (1975).

---

ues to be used in Count II of the amended complaint and in the exhibit attached. The lower figure seems to be an error.

164

## ORDER

Now, this July 1, 1983, the motion to strike the claim for 12 percent interest is granted, all other objections are overruled. Defendants are allowed 30 days to answer the amended complaint.